UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| JIANGSU ALCHA ALUMINUM CO., LTD. AND ALCHA INTERNATIONAL HOLDINGS LTD., <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>UNITED STATES, <br><br>　　　　Defendant, <br><br>　　and <br><br>ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, <br><br>　　　　Defendant-Intervenors. | Court No. 22-00290 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF**
**RULE 56. 2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

　　　　　　　　　　　　　　　　　　Dan Cannistra
　　　　　　　　　　　　　　　　　　Weronika Bukowski

　　　　　　　　　　　　　　　　　　Crowell & Moring LLP
　　　　　　　　　　　　　　　　　　1001 Pennsylvania Avenue, NW
　　　　　　　　　　　　　　　　　　Washington, DC 20004
　　　　　　　　　　　　　　　　　　Tel: (202) 624-2500
　　　　　　　　　　　　　　　　　　Email: dcannistra@crowell.com

　　　　　　　　　　　　　　　　　　*Counsel to Plaintiffs*

Dated: October 2, 2023

**TABLE OF CONTENTS**

PLAINTIFFS' REPLY BRIEF ................................................................................................. 1

ARGUMENT ............................................................................................................................. 1

    A.    The Department's Use of Adverse Facts Available for the Export Buyer's Credit Program Was Not in Accordance with the Law and Was Unsupported by Substantial Evidence ................................................................... 1

        1.    There is no gap in the record as to whether Alcha and its customers used the EBC program. ............................................................................. 1

        2.    If a gap existed, Commerce failed to provide Alcha an opportunity to remedy the issue ................................................................................... 3

        3.    The Department's practice required it to ignore record evidence ............... 4

    B.    The Department's Application of the 17 Percent VAT Rate to Calculate the Benchmark for Primary Aluminum for LTAR Was Not in Accordance with the Law and Unsupported by Substantial Evidence ........................................ 6

CONCLUSION ......................................................................................................................... 7

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Changzhou Trina Solar Energy Co. v. United States*,
   352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ..............................................................2

*CS Wind Vietnam Co. v. United States*,
   832 F.3d 1367 (Fed. Cir. 2016)...................................................................................6

*Dalian Meisen Woodworking Co., v. United States*,
   No. 20-00110, slip op. 23-57, 2023 Ct. Intl. Trade LEXIS 70 (Apr. 24, 2023) .........5

*Mid Continent Steel & Wire, Inc. v. United States*,
   940 F.3d 662 (Fed. Cir. 2019)....................................................................................6

*Yama Ribbons & Bows Co. v. United States*,
   419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ..............................................................3

*Yama Ribbons & Bows Co. v. United States*,
   611 F. Supp. 3d 1394 (Ct. Int'l Trade 2022) ..............................................................2

*Yama Ribbons & Bows Co. v. United States*,
   No. 21-00402, slip. op. 23-127, 2023 Ct. Intl. Trade LEXIS 129 (Aug. 25,
   2023) ...........................................................................................................................5

**Other Authorities**

*2022 Countervailing Duty Administrative Review of Truck and Bus Tires from the
   People's Republic of China: Initial Questionnaire*, C-570-041, Barcode No.
   4385577-01 (June 5, 2023) ..................................................................................... 5-6

Remand Results, *Dalian Meisen Woodworking Co. v. United States*, No. 20-
   00110, ECF No. 86 (Ct. Int'l Trade Aug. 5, 2022)....................................................5

Remand Results, *Risen Energy Co., Ltd. v. United States*,
   No. 20-03192, ECF No. 94 (Ct. Int'l Trade Oct. 7, 2022).........................................5

## PLAINTIFFS' REPLY BRIEF

Plaintiffs Jiangsu Alcha Aluminum Co., Ltd. and Alcha International Holdings Ltd ("Plaintiffs" or "Alcha") submit this Reply Brief in support of its Motion for Judgment on the Agency Record. Rule 56.2 Mot. on behalf of Plaintiffs (Apr. 14, 2023), ECF No. 29 ("Alcha's Mot.").

## ARGUMENT

### A. The Department's Use of Adverse Facts Available for the Export Buyer's Credit Program Was Not in Accordance with the Law and Was Unsupported by Substantial Evidence

The Government argues that the Department of Commerce ("Commerce" or "the Department") appropriately applied facts otherwise available with an adverse inference (collectively referred to by Commerce as "AFA") in connection with the Export Buyer's Credit program ("EBC program" or "EBCP") because the government of China ("GOC") refused to participate in the underlying review, which "prevented verification of Alcha's claims of non-use." Def's Resp. to Pl's Mot. For J. on the Agency R. 14 (July 10, 2023), ECF No. 31 ("Def.'s Resp."); Br. of Def.-Int. 8–14 (Aug. 23, 2023), ECF No. 32. The Court should reject these arguments.

#### 1. There is no gap in the record as to whether Alcha and its customers used the EBC program.

Commerce found that applying AFA was appropriate because "{t}he GOC failed to respond to Commerce's requests for information in this {period of review}." *Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from the People's Republic of China; 2020* (Aug. 30, 2022) ("IDM"), at Appx14206. Plaintiffs do not dispute that the government of China did not respond to the Initial CVD Questionnaire, and that this uniquely positions this case compared to others where the

1

government of China responded in part, but not fully. *See e.g., Yama Ribbons & Bows Co. v. United States*, 611 F. Supp. 3d 1394 (Ct. Int'l Trade 2022). However, it is clear from the Final Issues and Decision Memorandum that the Department's concern with the government of China's lack of response is that it prevented Commerce "from analyzing the function of the program." IDM at Appx14206. This notion is reiterated by the Government's response in this action, which argues that the government of China's "refusal to cooperate" resulted in the application of facts otherwise available with an adverse inference against Alcha because the government of China "is the only entity with the ability to explain the internal administration" of the ECB Program. Def.'s Resp. 18.

These statements continue to inappropriately equate the program's operation with its use. Alcha's Mot. 18. The missing information relates only to the *operation* of the EBC program, and does not impact Commerce's ability to determine whether GRT or its customers *used* the EBC program. *See Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1326 (Ct. Int'l Trade 2018) ("Commerce, however, did not explain why the GOC's failure to explain this program was necessary to assess claims of non-use and why other information accessible to respondents was insufficient."). Indeed, the reasoning Commerce presented when discussing the gaps on the record does not differ from that of other cases assessing the EBC program. Alcha's Mot. 17–18.

Instead, the evidence on the record that was relevant to Alcha's usage or non-usage of the EBC program made clear that neither Alcha nor its sole U.S. customer utilized the EBC program. In its response to Section III of the Department's initial CVD questionnaire ("IQR"), Alcha (1) submitted to Commerce information related to its sole U.S. customer, (2) unequivocally confirmed that Alcha did not benefit from the EBC Program, (3) confirmed that its U.S.

customer did not use the EBC program, and (4) explained that it would be impossible for Alcha's U.S. customer to use the program without Alcha's knowledge. IQR at Appx1239–1240. Alcha also appended a copy of the Administrative Measures to its questionnaire response which confirmed that it would be impossible for any of Alcha's customers to use the program without Alcha's knowledge. *See id.* at Appx1240. Ultimately, Commerce did not need to turn to an adverse inference to fill any claimed "gaps" in the record, Def.'s Resp. 12, because there were no gaps in the record as to the question of whether Alcha or its customers used the EBC program. Furthermore, Commerce mischaracterized the record evidence submitted by Alcha in its preliminary decision memorandum, which was not revised in the Final Results. Alcha's Mot. 14 (citing *Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from the People's Republic of China*; 2020 (Feb. 25, 2022), at Appx13913; IDM at Appx14191).

Defendant argues that, because export buyer's credits are provided to someone other than the respondent, "Commerce asked the government of China for information covering all areas required by statute, including use of the program, financial contribution, specificity, and benefit." Def.'s Resp. 16 (quoting Appx1096–1097). However, Commerce directed questions regarding benefit and use to Alcha, which were answered. *See* IQR at Appx1239–1240. Moreover, Alcha confirmed that it reached out to its sole U.S. customer, and stated in its certified questionnaire responses that its customer confirmed it did not use the program. *Id.* at Appx1240. Therefore, evidence was on the record as to the program's benefit and use.

> **2. If a gap existed, Commerce failed to provide Alcha an opportunity to remedy the issue.**

Even were the Court to determine there are gaps in the record as to the question of EBC program usage, Commerce acted contrary to the law by applying facts otherwise available with an

3

adverse inference without providing Alcha an opportunity to fill these gaps. *See Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ("Defendant-intervenor argues that Yama should have obtained certifications of non-use from each of its customers {}, but the absence of such certifications is not justification allowing Commerce to ignore the record evidence that existed."). If Commerce was not satisfied with what Alcha provided then it could have easily requested additional information, which Plaintiffs were prepared to submit. *See* IQR, Cover Letter at Appx1209 (acknowledging that the information in the submission "may be subject to verification or corroboration"). However, Commerce never made such a request, despite issuing six supplemental questionnaires that Alcha provided timely responses to. Alcha's Mot. 5, 10.

Defendant argues that Alcha's non-use claims were not verifiable. Def.'s Resp. 19. However, it is apparent that Commerce will attempt to verify when certifications from U.S. customers are provided. *See* Alcha's Mot. 25–27. Alcha had a single U.S. customer that, as indicated by Alcha's responses to Section III of the Department's Initial CVD Questionnaire, had confirmed to Alcha that it did not use the program. IQR at Appx1240. Alcha was ready and willing to provide additional information related to this customer if the Department viewed such as necessary.

### 3. The Department's practice required it to ignore record evidence.

The Final Issues and Decision Memorandum states that "[b]ecause the Alcha Group did not provide non-use certifications from its U.S. customers, we did not take further steps to confirm that its customers did not, in fact, receive export buyer's credits from the China Ex-Im Bank." Appx14213. Defendant argues that this is "not a fully accurate reflection of Commerce's current practice, which is to accept and to analyze any information on any issue submitted on the record of a proceeding." Def's. Resp. at 38. However, upon reviewing the language of the Final Issues & Decisions Memorandum of this proceeding, it is clear that it is

4

Commerce's practice only to attempt verification if customer certifications are provided. IDM at Appx14213. This language and practice is also present in several proceedings discussing the EBC program. Alcha's Mot. 26 (citing Remand Results at 14, *Dalian Meisen Woodworking Co. v. United States*, No. 20-00110, ECF No. 86 (Ct. Int'l Trade Aug. 5, 2022); Remand Results, *Risen Energy Co., Ltd. v. United States*, No. 20-03192, ECF No. 94 (Ct. Int'l Trade Oct. 7, 2022)).

Additionally, this Court has remanded to Commerce when it has implemented this practice in two cases since the filing of Alcha's 56.2 motion. In *Dalian Meisen Woodworking Co., v. United States*, No. 20-00110, slip op. 23-57, 2023 Ct. Intl. Trade LEXIS 70 at *8, 27 (Apr. 24, 2023), this Court found the Department's Remand Results unsupported by substantial evidence when Commerce did not verify a respondent's submissions providing information for fifteen of its twenty-seven U.S. customers, which constituted approximately 90% of its U.S. sales by volume. The Court also remanded the Department's determination in *Yama Ribbons & Bows Co. v. United States*, No. 21-00402, slip. op. 23-127, 2023 Ct. Intl. Trade LEXIS 129, at *13, *17 (Aug. 25, 2023), when Commerce did not attempt to verify the respondent's non-use claims even though respondent submitted customer certifications for about 28% of its U.S. customers.

As these cases demonstrate, the Department's current practice is unsupported by substantial evidence and contrary to law. As discussed in Alcha's 56.2 motion, this practice requires Commerce to ignore evidence elsewhere on the record if it determines certifications from all U.S. customers are not provided in response to the Initial CVD Questionnaire. Alcha's Mot. 26. Furthermore, Alcha is not aware that the Department or the Court has ever clarified the acceptable forms of a non-use certification. Indeed, it appears that Commerce has never specified the scope, content, or format of a non-use certification. Additionally, the questionnaire issued by Commerce

5

provided no guidance on this issue. Even questionnaires that Commerce has issued in recent proceedings fail to provide any guidance on the acceptable format of certifications. *See, e.g., 2022 Countervailing Duty Administrative Review of Truck and Bus Tires from the People's Republic of China: Initial Questionnaire*, C-570-041, Barcode No. 4385577-01 at II-5–6 (June 5, 2023). Commerce must properly justify its chosen methodology, and it has not done so in this instance. *See Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 674–75 (Fed. Cir. 2019) (citing *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016)).

Ultimately, Alcha participated throughout the proceeding and was ready and willing to provide additional information. Alcha fully cooperated and stood ready to verify its assertions of non-use. It did not get the opportunity to do so. All in all, had Commerce attempted to verify Alcha's claims of non-use in the underlying proceeding, it would have been met with very straightforward verification procedure.

### B. The Department's Application of the 17 Percent VAT Rate to Calculate the Benchmark for Primary Aluminum for LTAR Was Not in Accordance with the Law and Unsupported by Substantial Evidence

Both Defendant and Defendant-Intervenors argue that the Department's determination to use a 17 percent value-added VAT rate was supported by substantial evidence. Def.'s Resp. 27–30; Def.-Int. Resp. 14–17. As argued in Alcha's 56.2 motion, this determination was unsupported by substantial evidence because it ignored the 13 percent VAT rate that was reported by Alcha during the proceeding. Alcha Mot. 27–28. While Defendant argues that Commerce permissibility applied a 17 percent VAT rate because it was reported by the government of China in the underlying investigation, Def.'s Resp. 41, this finding was, in effect, applying facts otherwise available with an adverse inference. Alcha's Mot. 29. Additionally, Commerce had an obligation to provide Alcha the opportunity to supplement that information it

provided if such information was deficient. *Id.* at 29. This information would have been easily verifiable. *Id.* at 30.

Both Defendant and Defendant-Intervenors also argue that this court should not consider the website referenced in Alcha's 56.2 Motion. Def.'s Resp 42–43; Br. of Def.-Int. 16–17. However, there is ample documentation provided by Alcha on the record confirming that the correct VAT rate was 13 percent. In the questionnaire responses, Alcha reported purchasing domestically produced primary aluminum. IQR at Appx 1229–1230. Furthermore, Alcha provided to Commerce records indicating payment of a 13% VAT rate on all domestic purchases of primary aluminum. IQR at Appx81884, Appx81887, Appx81890, Appx81896, Appx81898, Appx81900, Appx81902, Appx8190. Therefore, the website material referenced in Alcha's motion is non-dispositive on this issue and was an additional data point for information that was already on the record.

## CONCLUSION

For the forgoing reasons, Alcha respectfully requests the Court to remand this case to Commerce with the appropriate instructions.

Respectfully submitted,

/s/ *Weronika Bukowski*

Daniel Cannistra
Weronika Bukowski

Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Email: dcannistra@crowell.com

*Counsel to Plaintiffs*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| JIANGSU ALCHA ALUMINUM CO., LTD. AND ALCHA INTERNATIONAL HOLDINGS LTD., <br><br>       Plaintiffs, <br><br>    v. <br><br> UNITED STATES, <br><br>       Defendant, <br><br>    and <br><br> ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, <br><br>       Defendant-Intervenors | Court No. 22-00290 |

**CERTIFICATE OF COMPLIANCE**

Pursuant to U.S. Court of International Trade Rule 2(b)(2) of the Court's Standard Chambers Procedures, undersigned counsel for Plaintiffs, certifies this brief complies with the Court's type-volume limitation rules.  This brief contains no more than 2,600 words and therefore does not exceed 7,000 words.  This brief also complies with all typeface and margin requirements.

Respectfully submitted,

/s/ *Weronika Bukowski*
Weronika Bukowski

*Counsel to Plaintiffs*